# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK WHITTY and TAZU WHITTY,<br><br>                  Plaintiffs,<br><br>   vs.<br><br><br>FIRST NATIONWIDE MORTGAGE CORPORATION, CITIMORTGAGE INC., CITIGROUP INC., CHASE MANHATTAN BANK, N.Y., WILLIAM WHEELER, SALLIE KRAWCHECK, and DOES 1 THROUGH 80,<br><br>                 Defendants. | CASE NO. 05-CV-1021 H (BLM)<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS, GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO STRIKE, AND DENYING PLAINTIFFS' MOTION TO AMEND<br><br>[Doc. Nos. 46, 48, 55, 56] |

On May 11, 2005, pro se Plaintiffs Frank and Tazu Whitty ("Plaintiffs") brought this suit alleging twenty-five causes of action arising from the foreclosure of their real property located at 13992 Putney Road in Poway, California ("the property"), the adverse judgment in state court case <u>Whitty v. First Nationwide Mortgage Corp., et al.</u>, San Diego Superior Court Case Number GIC789369 ("the state suit"), and numerous bankruptcy proceedings. (Doc. No. 1.) Plaintiff Frank Whitty is a law school graduate and candidate for admission to the State Bar of California. (Pls' Opp'n Defs.' Mot. Dismiss, at 15; Defs.' Mem. P. & A. Supp. Mot. Dismiss, at 1.)

On August 22, 2006, Plaintiffs filed a Second Amended Complaint ("SAC") alleging fifteen causes of action against defendants Chase Manhattan Bank N.Y. ("Chase"), First Nationwide Mortgage Corporation ("FNMC"), CitiMortgage Inc. ("CMI"), CitiGroup Inc. ("CGI"), Sallie Krawcheck, William Wheeler, and Does 1-80. (Doc. No. 24.) Plaintiffs pleaded that this Court has jurisdiction over this suit based on diversity jurisdiction. (Id. at 2.) On November 27, 2006, defendants FNMC, CMI, CGI, Sallie Krawcheck, and William Wheeler (collectively "Defendants") filed a motion to strike certain claims and allegations from the SAC pursuant to section 425.16 of California's Code of Civil Procedure, commonly known as an anti-Strategic Litigation Against Public Participation ("SLAPP") motion. (Doc. Nos. 45-46.) On November 30, 2006, Defendants filed a motion to dismiss Plaintiffs' SAC. (Doc. No. 48.) On December 8, 2006, and again on December 18, 2006, Defendants filed a supplemental notice of lodgement adding exhibits 22 and 23. (Doc. Nos. 51, 54.) On December 26, 2006, Plaintiffs filed oppositions to Defendants' motion to strike and motion to dismiss, in which Plaintiffs requested leave of the court to amend their complaint. (Doc. Nos. 55, 56.) Defendants filed replies to Plaintiffs' oppositions on January 3, 2007. (Doc. Nos. 57, 58.) On February 23, 2007, Defendants filed a supplemental document adding exhibit 25, the California Supreme Court's denial of Plaintiffs' appeal in the state suit. (Doc. No. 70.)

The Court exercises its discretion to decide these matters on the papers pursuant to Local Civil Rule 7.1(d)(1). For the following reasons, the Court **GRANTS WITH PREJUDICE** Defendants' motion to dismiss Plaintiffs' claims for intentional interference with prospective economic advantage (claim one), fraud (claim two), negligence (claim three), wire fraud (claim four), mail fraud (claim five), interference with contract (claim six), breach of contract (claim seven), conversion (claim eight), unfair business practices (claim nine), breach of the covenant of good faith and fair dealing (claim ten), fraud on the court (claim eleven), contempt of federal bankruptcy orders (claim twelve), interference with a court trial (claim thirteen), fixing the outcome

of a trial (claim fourteen), and wrongful prevention (claim fifteen).  Accordingly, Defendants FNMC, CMI, CGI, Krawcheck and Wheeler are dismissed from this case. The Court **GRANTS WITHOUT PREJUDICE** Defendants' motion to dismiss the Doe defendants for untimely service.  The Court **GRANTS IN PART AND DENIES IN PART** Defendants anti-SLAPP motion.  The Court **DENIES** Plaintiffs request to file an amended complaint to add RICO claims.

### Background

In 1992, Plaintiffs obtained a $385,000 loan from Beverly Hills Financial, secured by the property.  (SAC ¶¶ 9-10.)  Beverly Hills Financial was purchased by Texas Commerce Bank in 1993, and thereafter Plaintiffs' loan was serviced by Lomas Mortgage Corporation ("Lomas")  from 1993 to 1996.  (Id. ¶ 10.)  Lomas initiated foreclosure proceedings against the property in February 1994, alleging that Plaintiffs were in default.  (Id. ¶¶ 11-12.)  Plaintiffs filed bankruptcy on June 10, 1994, in order to prevent the foreclosure.  (Id. ¶¶ 15-16.)  In early 1996, Plaintiffs were informed that FNMC had taken over servicing Plaintiffs' loan for Chase, the new loan owner.  (Id. ¶ 20.)

On September 27, 1997, Plaintiffs converted their chapter 11 bankruptcy suit to a chapter 13 suit.  (Id. ¶ 23.)  On July 8, 1998, the bankruptcy court, case number 96-10478,  issued an order limiting the arrearage to $47,602.23 as of September 1997.  (Id. ¶¶ 24-25; Defs.' Req. Take Judicial Notice, Ex. 6. ("Defs.' RJN").)

On May 26, 2000, the bankruptcy court granted FNMC's motion for relief from the bankruptcy stay on foreclosing on the property due to Plaintiffs' failure to pay their postbankruptcy mortgage payments.  (Defs.' RJN, Ex. 9.)  On July 19, 2000, the bankruptcy court entered an order preventing FNMC from conducting a foreclosure sale of the property if Plaintiffs made certain payments to FNMC, and allowing FNMC to file a motion for the bankruptcy court to reconsider its order limiting the arrears to $47,602.23 as of September 1997.  (Id., Ex. 7.)  In December 2000, Plaintiffs and FNMC agreed to meet and attempt to reach an agreement on the arrearage amount, to allow

either party to request an arbitration if an agreement could not be reached, and that no foreclosure sale would be conducted until 90 days after the date of the award by the arbitrator. (SAC ¶¶ 34-35; Defs.' RJN, Ex. 21.) On April 7, 2001, Plaintiffs and FNMC met to discuss the arrearage. (SAC ¶ 37.) On April 17, 2001, however, Plaintiffs voluntarily dismissed their bankruptcy case. (SAC ¶ 41; Defs' RJN, Exs. 10, 11.) On June 19, 2001, FNMC filed another foreclosure against the property. (SAC ¶ 42.) The property was sold at foreclosure to a third party on June 3, 2002 for $516,285.49. (Id. ¶¶ 45-47.)

On July 3, 2003, Plaintiffs filed a sixth amended complaint against FNMC in the state suit, alleging wrongful foreclosure, conversion, and other claims. (Defs.' RJN, Ex. 1.) On June 8, 2004, the jury in the state suit found against Plaintiffs on their claims of wrongful foreclosure and conversion. (Id., Ex. 4.) On August 26, 2004, the court in the state suit denied Plaintiffs' motion for judgment notwithstanding the verdict. (Id., Ex. 3.) On August 30, 2004, the court in the state suit denied Plaintiffs' motion for a new trial, and granted FNMC's motion for attorney fees. (Id., Ex. 2, at 5-8.)

On July 31, 2006, Plaintiffs filed a fourth amended complaint against their attorney in the state suit, Kenneth Stone, in San Diego Superior Court, case number GIC847102, alleging negligence, fraud, and other claims arising out of Stone's representation of Plaintiffs in the state suit. (Id., Ex. 20.) On December 11, 2006, the California Court of Appeal dismissed Plaintiffs' appeal from the judgment in the state suit because the appeal was untimely, and affirmed on the merits the trial court's denial of Plaintiffs' motion for judgment notwithstanding the verdict. (Defs.' Supplemental Req. Take Judicial Notice Supp. Mot. Dismiss, Ex. 23.) On February 21, 2007, the California Supreme Court denied Plaintiffs' petition for review of the California Appellate Court's decision. See Whitty v. FNMC, No. S149628, slip op. at 1 (Cal. Sup. Ct. Feb. 21, 2007).

Plaintiffs allege in the instant suit claims for intentional interference with prospective economic advantage (claim one), fraud based on alleged misrepresentations

to lenders and a prospective buyer of the property (claim two), negligence (claim three), wire fraud (claim four), mail fraud (claim five), interference with contract based on contracts between Plaintiffs and potential lenders, and between Plaintiffs and a potential purchaser of the property(claim six), breach of contract (claim seven), conversion (claim eight), unfair business practices (claim nine), breach of the covenant of good faith and fair dealing (claim ten), and wrongful prevention (claim fifteen).  Plaintiffs also allege that some or all of the Defendants induced, forced, or coerced Plaintiffs' trial attorney in the state suit to breach his fiduciary duties toward Plaintiffs, (see, e.g., id. ¶¶ 66, 236, 240,) that FNMC made a series of false declarations to the bankruptcy court, (see, e.g., id. ¶¶ 29-33, 224-25,) that Defendants did not comply with orders of the bankruptcy court, (see, e.g., id. ¶¶ 231-32,) and that FNMC presented false evidence in the state suit. (See, e.g., id. ¶¶ 105, 111, 227-28.)  These latter allegations form the basis for Plaintiffs claims for fraud based on alleged misrepresentations made in the bankruptcy court (claim two), interference with contract based on a contract between Plaintiffs and their attorney in the state suit (claim six), fraud on the court (claim eleven), contempt of federal bankruptcy orders (claim twelve), interference with a court trial (claim thirteen), and fixing the outcome of a trial (claim fourteen).

## **Discussion**

### A.    **Request For Judicial Notice**

Attached to their motion to dismiss, Defendants submitted a request that the Court take judicial notice of copies of the sixth amended complaint, numerous orders, and the judgment from Whitty v. First Nationwide Mortgage Corp., San Diego Superior Court Case Number GIC789369, (Defs.' RJN, Exs. 1-4); the docket from the appeal of the state suit, (id., Ex. 5); numerous pleadings, minutes, and orders from In re Frank Whitty and Tazu Whitty, United States Bankruptcy Court, Southern District of California, Case Number 96-10478, (id., Exs. 6-11, 21); the docket and dismissal from Whitty v. First Nationwide Mortgage Corp., United States Bankruptcy Court, Southern District of California, Case Number 00-90132 (id., Exs. 18-19); the docket and complaint from

<u>Whitty v. First Nationwide Mortgage Corp.</u>, United States Bankruptcy Court, Southern District of California, Case Number 01-90514 (<u>id.</u>, Exs. 12-13); the docket from <u>In re Tazu Whitty</u>, United States Bankruptcy Court, Southern District of California, Case Number 01-10501 (<u>id.</u>, Exh. 14); the docket and a stipulated judgment from <u>In re Frank Joseph Whitty</u>, United States Bankruptcy Court, Southern District of California, Case Number 02-2321 (<u>id.</u>, Exs. 15-16); the docket from <u>In re Frank Joseph Whitty</u>, United States Bankruptcy Court, Southern District of California, Case Number 02-6764, (<u>id.</u>, Exh. 17); and the fourth amended complaint by plaintiffs Frank and Tazu Whitty against their attorney in the state suit, Kenneth Stone, from <u>Whitty v. Stone</u>, San Diego Superior Court Case Number GIC847102, (<u>id.</u>, Ex. 20).  Defendants also filed requests that the Court take judicial notice of the complaint from <u>Whitty v. First Nationwide Mortgage Corp.</u>, United States Bankruptcy Court, Southern District of California, Case Number 00-90132, (Doc. No. 51, Ex. 22,) and the decision from the California Appellate Court, Case Number D045303, denying Plaintiffs' appeal from the state suit.  (Doc. No. 54, Ex. 23.)

Federal courts may take judicial notice of other courts' proceedings, within the federal judiciary and without, if the proceedings directly relate to the matters before the court.  <u>See</u> <u>U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.</u>, 971 F.2d 244, 248 (9th Cir. 1992).  Accordingly, the Court takes judicial notice of the requested documents.  Furthermore, a matter that is properly the subject of judicial notice may be considered along with the complaint when deciding a motion to dismiss.  <u>See</u> <u>MGIC Indem. Corp. v. Weisman</u> 803 F.2d 500, 504 (9th Cir. 1986).

**B.     Motion To Dismiss**

Defendants have moved to dismiss Plaintiffs' entire suit against them under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.  Rule 12(b)(6) permits dismissal of a claim either where that claim lacks a cognizable legal theory, or where insufficient facts are alleged to support plaintiff's theory.  <u>See</u> <u>Balistreri v. Pacifica Police Dept.</u>, 901 F.2d 696, 699 (9th Cir.

1990).  In considering the sufficiency of a complaint under Rule 12(b)(6), courts cannot grant a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Id. (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  In resolving a Rule 12(b)(6) motion, the court must: (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief.  See Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996).

Dismissal is proper, however, if a complaint is vague, conclusory, and fails to set forth any material facts in support of the allegation.  See North Star Intern. v. Arizona Corp. Com'n, 720 F.2d 578, 583 (9th Cir. 1983).  Furthermore, a court may not "supply essential elements of the claim that were not initially pled."  Ivey v. Bd. of Regents of the Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).  If a complaint is found to fail to state a claim, the court should grant leave to amend unless it determines that the pleading could not possibly be cured by the allegation of other facts.  See Doe v. United States, 58 F.3d 494, 497 (9th Cir.1995).

### 1.    Claim Preclusion

Defendants argue that Plaintiffs claims for intentional interference with prospective economic advantage, fraud, negligence, wire fraud, mail fraud, interference with contract, breach of contract, conversion, unfair business practices, breach of the covenant of good faith and fair dealing, and wrongful prevention should be barred by claim preclusion because all of the claims should have been brought as compulsory claims in the state suit.  Claim preclusion may appropriately be argued on a motion to dismiss.  See Scott v. Kuhlmann, 746 F.2d 1377, 1378 (9th Cir. 1984) (holding that claim preclusion is appropriately raised on a motion to dismiss if the defendant does not raise issues of disputed facts); see also 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4405, p. 105 (2d ed. 2002) (raising preclusion defenses on motion to dismiss most appropriate when defense appears on face

of complaint);  Schwarzer, et al., <u>California Practice Guide: Federal Civil Procedure Before Trial</u> (The Rutter Group 2006) ¶ 9:212.16, p. 9-63 (defense of res judicata can be raised by 12(b)(6) motion when based on records of which court takes judicial notice).  Plaintiffs have alleged in detail the facts of the state suit in their complaint. (<u>See, e.g.</u>, compl. ¶¶ 66-165.)  Additionally, the Court has taken judicial notice of the court records from the state suit.  Accordingly, Defendants' claim preclusion argument is validly raised in its 12(b)(6) motion.

A federal court deciding whether a claim is precluded by a prior state court claim must use the claim preclusion law from the state from which the prior judgment was taken.  <u>See</u> <u>Noel v. Hall</u>, 341 F.3d 1148, 1166 (9th Cir. 2003); <u>see also</u> <u>Costantini v. Trans World Airlines</u>, 681 F.2d 1199, 1201 (9th Cir.1982) (holding that a federal court sitting in diversity must apply the claim preclusion law of the state in which it sits).  In California, claim preclusion prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them.  <u>See</u> <u>Mycogen Corp. v. Monsanto Co.</u>, 28 Cal. 4th 888, 896 (2002).  Claim preclusion applies when: (1) the claim raised in the prior adjudication is identical to the claim presented in the later action; (2) the prior proceeding resulted in a final judgment on the merits; and (3) the party against whom the doctrine is being asserted was a party or in privity with a party to the prior adjudication.  <u>See</u> <u>In re Anthony H.</u>, 129 Cal. App. 4th 495, 503 (2005).  A judgment for the defendant in a prior suit serves as a bar to further litigation of the same cause of action in subsequent suits.  <u>See</u> <u>id.</u>  Under the claim preclusion doctrine, all claims based on the same cause of action must be decided in a single suit; if not brought initially, they may not be raised at a later date. <u>See</u> <u>id.</u> at 897.

In order for claims to be barred by the doctrine of claim preclusion, however, a federal court must determine, based on state law, whether the judgment is final and therefore conclusive in the federal court.  <u>See</u> <u>Turnbow v. Pacific Mut. Life Ins. Co.</u>, 934 F.2d 1100, 1103 (1991).  In California, an action is deemed to be pending from the time of its commencement until its final determination upon appeal, or until the time for

1  appeal has passed, unless the judgment is sooner satisfied.  See Cal. Civ. Proc. Code

2  § 1049; see also  Franklin & Franklin v. 7-Eleven Owners for Fair Franchising, 85 Cal.

3  App. 4th 1168, 1174 (2000).  Once the California Supreme Court denies review, the state

4  suit is final for claim preclusion purposes.  See Macedo v. Bosio, 86 Cal. App. 4th 1044,

5  1051 n.5 (2001).  On February 21, 2007, the California Supreme Court denied Plaintiffs'

6  petition for review of the California Appellate Court's order affirming the jury verdict

7  in the state suit against Plaintiffs on their claims for wrongful foreclosure and

8  conversion.  See Whitty v. FNMC, No. S149628, slip op. at 1 (Cal. Sup. Ct.  Feb. 21,

9  2007).  Accordingly, the state suit is final for purposes of its claim preclusive effect.

10  Whether two suits are based on the same cause of action under California law is

11  based on the primary right theory.  See id. at 904.  The primary right theory provides that

12  a cause of action is comprised of a primary right of the plaintiff, a corresponding primary

13  duty of the defendant, and a wrongful act by the defendant constituting a breach of that

14  duty.  See id.  Even where there are multiple legal theories upon which recovery might

15  be predicated, a defendant in a second suit may prevent a plaintiff who lost on the merits

16  in a previous suit from bringing the second suit based on the same primary right under

17  the principles of claim preclusion.  See id.

18  The primary rights litigated in the state suit were the rights of Plaintiffs to not

19  have their property wrongfully foreclosed by FNMC, and the rights of Plaintiffs to

20  receive the appropriate credit for payments made to FNMC when calculating the amount

21  of money Plaintiffs owed on their mortgage.  See Whitty v. FNMC, Case No.

22  GIC789369, Judgement on Jury Verdict and By Court (Cal. Super. Ct. June 8, 2004)

23  (Defs.' RJN, Ex. 4); see also Whitty v. FNMC, Case No. D045303, slip op., at 9-12 (Cal.

24  Ct. App. Dec. 11, 2006) (Defs.' Supplemental Req. Take Judicial Notice Supp. Mot.

25  Dismiss, Ex. 23).

26  These are the same primary rights that Plaintiffs are attempting to litigate in their

27  claims for intentional interference with prospective economic advantage, fraud based on

28  alleged misrepresentations to lenders and a prospective buyer of the property,

1   negligence, wire fraud, mail fraud, interference with contract based on contracts between
2   Plaintiffs and potential lenders, and between Plaintiffs and a potential purchaser of the
3   property, breach of contract, conversion, unfair business practices, breach of the
4   covenant of good faith and fair dealing, and wrongful prevention, in the case before this
5   Court.  Therefore, the doctrine of claim preclusion serves as a bar to Plaintiffs bringing
6   these claims against FNMC, since these claims represent an attempt to relitigate the same
7   causes of action between Plaintiffs and FNMC from the state suit from which Plaintiffs
8   received an adverse judgment on the merits.

9   Accordingly, the Court grants Defendants motion to dismiss Plaintiffs' claims for
10   intentional interference with prospective economic advantage, fraud based on alleged
11   misrepresentations to lenders and a prospective buyer of the property, negligence, wire
12   fraud, mail fraud, interference with contract based on contracts between Plaintiffs and
13   potential lenders, and between Plaintiffs and a potential purchaser of the property, breach
14   of contract, conversion, unfair business practices, breach of the covenant of good faith
15   and fair dealing, and wrongful prevention against FNMC.   Moreover, dismissal with
16   prejudice is proper since the defect appears to not be curable by amendment.  See Vess
17   v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1108 (9th Cir. 2003).

18   Additionally, Plaintiffs are barred from bringing these claims against parties in
19   privity with FNMC.  See Mycogen Corp., 28 Cal. 4th at 896; In re Anthony H., 129 Cal.
20   App. 4th at 503.  "Privity ," for purposes of claim preclusion, involves a person so
21   identified in interest with another that he represents the same legal right.   See
22   Rynsburger v. Dairymen's Fertilizer Co-op., Inc., 266 Cal. App. 2d 269, 277 (1968).
23   Plaintiffs are suing CMI on the relevant claims based on the fact that FNMC merged into
24   CMI. (SAC ¶ 5.) They are suing CGI on the relevant claims based on the fact that CGI
25   owns a controlling interest in FNMC.  (SAC ¶¶ 2, 4.)  Plaintiffs are suing Wheeler on
26   the relevant claims based on the fact that he was a vice-president in the bankruptcy
27   division of FNMC.  (Id. ¶ 5.)  Plaintiffs are suing Krawcheck on the relevant claims
28   based on the fact that she was the chief financial officer of CGI. (Id. ¶ 7.)  Therefore,

CMI, CGI, Wheeler and Krawcheck are in privity with FNMC for purposes of Plaintiffs claims for intentional interference with prospective economic advantage, fraud based on alleged misrepresentations to lenders and a prospective buyer of the property, negligence, wire fraud, mail fraud, interference with contract based on contracts between Plaintiffs and potential lenders, and between Plaintiffs and a potential purchaser of the property, breach of contract, conversion, unfair business practices, breach of the covenant of good faith and fair dealing, and wrongful prevention. Thus, Plaintiffs are also barred from bringing these claims against CMI, CGI, Wheeler and Krawcheck under the doctrine of claim preclusion. Accordingly, the Court grants Defendants motion to dismiss these claims against CMI, CGI, Wheeler and Krawcheck. Moreover, dismissal with prejudice is proper since the defect appears to not be curable by amendment. See Vess, 317 F.3d at 1108.

### 2. Rooker-Feldman Doctrine

Defendants argue that Plaintiffs claims for intentional interference with prospective economic advantage, fraud, negligence, interference with contract, breach of contract, conversion, unfair business practices, breach of the covenant of good faith and fair dealing, contempt of federal bankruptcy orders, and wrongful prevention should be barred by the Rooker-Feldman Doctrine. The Rooker-Feldman Doctrine prevents a federal district court from hearing a direct appeal from the final judgment of a state court. See Noel, 341 F.3d at 1154. The Supreme Court has recently held, however, that the Rooker-Feldman Doctrine applies only when the unsuccessful party in state court files suit in federal district court seeking redress for an injury allegedly caused by the state court's decision itself, rather than when the unsuccessful party from state court attempts to relitigate the same claims. See Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 284 (2005); see also Henrichs v. Valley View Development, 474 F.3d 609, 614 (9th Cir. 2007) ("Preclusion, not Rooker-Feldman, applies when 'a federal plaintiff complains of an injury that was not caused by the state court, but which the state court has previously failed to rectify.'"). Based on the allegations in the complaint as

currently construed, the Rooker-Feldman doctrine does not apply.  Accordingly, the Court denies Defendants motion to dismiss Plaintiffs' claims for intentional interference with prospective economic advantage, fraud, negligence, interference with contract, breach of contract, conversion, unfair business practices, breach of the covenant of good faith and fair dealing, contempt of federal bankruptcy orders, and wrongful prevention based on the Rooker-Feldman Doctrine.

3.     **Sufficiency Of Alleged Facts Of All Claims Against CitiGroup, Inc.**

Plaintiffs only allege specific actions by CGI in their claims for conversion (claim eight) and breach of covenant of good faith and fair dealings (claim ten).  On their claims for intentional interference with prospective economic advantage (claim one), fraud (claim two), negligence (claim three), wire fraud (claim four), mail fraud (claim five), interference with contract (claim six), breach of contract (claim seven), unfair business practices (claim nine), fraud on the court (claim eleven), contempt of federal bankruptcy orders (claim twelve), interference with a court trial (claim thirteen), fixing the outcome of a trial (claim fourteen), and wrongful prevention (claim fifteen), Plaintiffs rely on the fact that CGI owns FNMC and CMI to attempt to hold CGI liable. (SAC ¶¶ 2-4.)

In diversity actions, federal courts look to state law to determine the requirements for "piercing the corporate veil."   See Hambleton Bros. Lumber Co. v. Balkin Enterprises, Inc., 397 F.3d 1217, 1227 (9th Cir. 2005).  Under California law, two general requirements must be met to pierce the corporate veil to reach a parent corporation: (1) there is such a unity of interest and ownership between the two corporations that their separate personalities no longer exist, and (2) the acts in question are such that if treated as those of the corporation alone, an inequitable result will follow. See Laird v. Capital Cities/ABC Inc., 68 Cal. App. 4th 727, 741 (1998) (rejecting a claim of alter ego for failure to show unity of interest); see also Institute of Veterinary Pathology, Inc. v. California Health Laboratories, Inc., 116 Cal. App.3d 111, 119-20 (1981) ("[T]he plaintiff must show 'specific manipulative conduct' by the parent toward

1   the subsidiary which 'relegate[s] the latter to the status of merely an instrumentality,

2   agency, conduit or adjunct of the former . . . .'").

3       Plaintiffs fail to allege any facts to support an argument that there is such a unity

4   of interest between CGI and FNMC and/or CMI that their separate personalities no

5   longer exist, or that an inequitable result will result by the failure to pierce the corporate

6   veil.  Therefore, Plaintiffs have failed to allege sufficient facts to hold CGI liable for the

7   actions of FNMC or CMI.  Accordingly, the Court grants Defendants motion to dismiss

8   the claims of intentional interference with prospective economic advantage, fraud,

9   negligence, wire fraud, mail fraud, interference with contract, breach of contract , unfair

10  business practices, fraud on the court, contempt of federal bankruptcy orders,

11  interference with a court trial, fixing the outcome of a trial, and wrongful prevention

12  against CGI.

13      Furthermore, the only actions that Plaintiffs allege that CGI engaged in with

14  regards to the conversion claim is the failure of its CFO, Sallie Krawcheck, to act after

15  being told by Plaintiffs about FNMC's actions that allegedly constituted conversion.

16  (SAC ¶¶ 213-14.)  This allegation is insufficient to support a direct claim of conversion

17  against CGI, or to justify piercing the corporate veil to reach CGI for FNMC's actions.

18  Accordingly, the Court grants Defendants motion to dismiss the conversion claim

19  against CGI.

20      Additionally, Plaintiffs allege in their claim for breach of covenant of good faith

21  and fair dealing that CGI has been fined and disciplined by certain state and federal

22  agencies for past conduct, including activities related to the Enron case.  (SAC ¶ 221.)

23  This allegation is insufficient to support a direct claim of breach of covenant of good

24  faith and fair dealing against CGI, or to justify piercing the corporate veil.  Accordingly,

25  the Court grants Defendants motion to dismiss the breach of covenant of good faith and

26  fair dealing claim against CGI.

27      4.   **Sufficiency Of Alleged Facts Of All Claims Against Sallie Krawcheck**

28      Defendants argue that Plaintiffs have failed to allege sufficient facts to support

any of Plaintiffs' claims against Krawcheck.   Plaintiffs allege that during her involvement with the instant case, Krawcheck was the chief financial officer of CGI. (SAC ¶ 7.) Plaintiffs also allege in their conversion claim that Krawcheck made a public statement regarding CGI's intention to do "what is right" regarding the Enron scandal and other previous wrongdoings, and that Krawcheck failed to take any action after she was informed of FNMC's alleged actions constituting conversion of Plaintiffs' money. (SAC ¶¶ 213, 214.)   Combined, these allegations are insufficient to support any of Plaintiffs' claims against Krawcheck. Accordingly, the Court grants Defendants motion to dismiss all of Plaintiffs' claims against Krawcheck.

### 5.   Sufficiency Of Alleged Facts Of All Claims Against William Wheeler

Defendants argue that Plaintiffs have failed to allege sufficient facts to support any of Plaintiffs' claims against Wheeler, because all of Plaintiffs allegations involving Wheeler are absolutely privileged under section 47(b)(2) of the California Civil Code. Plaintiffs allege that Wheeler has been a vice-president in the bankruptcy division of FNMC during all of the relevant periods of his claims.  (SAC ¶ 5.) Plaintiffs also allege that Wheeler falsely testified during the state suit regarding FNMC's accounting of the amount of money owed by Plaintiffs.  (SAC ¶¶ 68-69.)  Plaintiffs also allege in their fraud on the court claim that Wheeler presented false testimony to the bankruptcy court and the superior court.  (SAC ¶ 228.)

In civil actions for which state law provides the rule of decision, a federal court looks to state law for privilege rules.  See Fed. R. Evid. 501.  Section 47(b)(2) of the California Civil Code states that "[a] privileged publication or broadcast is one made [i]n any judicial proceeding."  This "litigation privilege" applies to any communication: (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action.  See Wentland v. Wass, 126 Cal. App. 4th 1484, 1490 (2005).  "[T]he purpose of the litigation privilege is to ensure free access to the courts, promote complete and truthful testimony, encourage zealous advocacy, give

finality to judgments, and avoid unending litigation." Id. at 1492. Although the statutory privilege accorded to statements made in judicial proceedings appears in the chapter of the California civil code on defamation, it applies to virtually all other causes of action in tort, with the exception of an action for malicious prosecution. See Ribas v. Clark, 38 Cal.3d 355, 364 (1985). Whether the litigation privilege applies to an action for breach of contract turns on whether its application furthers the policies underlying the privilege. See Wentland, 126 Cal. App. 4th at 1492.

Wheelers' testimony in the state suit, and to the bankruptcy court, were made in judicial proceedings by a participant authorized by law to achieve the objects of the litigation, and had a connection to the action. Therefore, these statements are absolutely privileged regarding any tort claims brought by Plaintiffs. Additionally, the application of the privilege to Plaintiffs' breach of contract claim would further the policies underlying the privilege. Therefore, the statements made by Wheeler during the state suit, and to the bankruptcy court, are absolutely privileged regarding all of Plaintiffs' claims against Wheeler.

Moreover, the statement that Wheeler was a vice-president in the bankruptcy division of FNMC during all of the relevant periods of Plaintiffs' claims is not sufficient to support any of Plaintiffs claims against Wheeler. Accordingly, the Court grants Defendants motion to dismiss all of Plaintiffs' claims against Wheeler.

**6.     Sufficiency of Alleged Facts Regarding Claims For Fraud and Fraud On Court**

Defendants also argue that the claims against FNMC and CMI should be dismissed based on the litigation privilege. The only claims against FNMC and CMI that are solely based on alleged statements made during judicial proceedings are Plaintiffs' claims for fraud based on alleged misrepresentations made in the bankruptcy court (claim two), and fraud on the court (claim eleven). As to these claims, Plaintiffs allege that Defendants made many false statements on many occasions to the Bankruptcy Court in the Southern District of California and to the San Diego County Superior Court.

These allegations fail to meet the particularity requirement of rule 9(b) of the Federal Rules of Civil Procedure.  Additionally, these statements were all made in judicial proceedings by participants authorized by law to achieve the objects of the litigation, and had a connection to the action.  Therefore, these statements are  privileged regarding Plaintiffs' claims for fraud based on alleged misrepresentations made in the bankruptcy court and fraud on the court.  Accordingly, the Court grants Defendants motion to dismiss Plaintiffs' claims for fraud based on alleged misrepresentations made in the bankruptcy court  and fraud on the court.  Moreover, it appears this defect is not curable by amendment.  Accordingly, the Court grants Defendants' motion to dismiss these claims with prejudice.

### 7.    Availability of Private Right Of Action For Fraud on The Court

Plaintiffs' eleventh claim alleges Defendants committed a fraud on both the bankruptcy court and the superior court in San Diego County.  (SAC ¶¶ 223-29.)  While such a claim may be the basis of a post-judgment motion or an appeal of the judgments in those courts, or the grounds for an equitable suit in state court to be relieved from the previous judgment, see Olivera v. Grace, 19 Cal. 2d 570, 575 (1942), Plaintiffs have not cited any authority for a federal cause of action.  In California, there is no civil remedy in damages against a witness who commits perjury when testifying.  See Cedars-Sinai Medical Center v. Superior Court, 18 Cal. 4th 1, 9 (1998).  The Cedars-Sinai Medical Center court explained that "'it would be productive of endless litigation' to permit the victim of a judgment allegedly based on false testimony to bring an action for damages." See id. at 9-10.  Even if considered under a motion for relief from judgment under rule 60(b) of the Federal Rules of Civil Procedure, which allows a court to entertain an independent action by a party to set aside or modify a prior judgment, see Snell v. Cleveland, Inc., 316 F.3d 822, 826 (9th Cir. 2002), Plaintiffs' have not brought a 60(b) motion to the bankruptcy court that adjudicated this matter.  Therefore, Plaintiffs' claim must be dismissed.  First, a 60(b) motion is not available to relieve Plaintiffs from a state court judgment.  Second, Plaintiffs are not requesting that a judgment be set aside, but

are requesting damages, which are not available under rule 60(b).  Third, this Court is the wrong court for such a motion to be made.  Moreover, it appears this defect is not curable by amendment.  Accordingly, the Court grants Defendants' motion to dismiss the eleventh claim against them with prejudice.

**8.      Availability of Private Right Of Action For Interference With Court Trial, And Fixing The Outcome Of Trial Court**

Plaintiffs' thirteenth claim for interference with a court trial and fourteenth claim for fixing the outcome of a trial allege Defendants corrupted Plaintiffs' attorney and perpetrated a fraud on the court in the state suit.  (SAC ¶¶ 235-42.)  Neither of these claims is a recognized common law or statutory claim that may appropriately be brought in this Court.  Indeed, Plaintiffs have not cited any case or statutory authority to support these claims.  Moreover, it appears these defects are not curable by amendment.  Accordingly, the Court grants Defendants' motion to dismiss the thirteenth, and fourteenth claims against them with prejudice.

**9.      Availability of Private Right Of Action For Contempt Of Federal Bankruptcy Court Orders**

Plaintiffs' twelfth claim alleges that FNMC and other defendants defied and acted in contempt of the bankruptcy court.  (SAC ¶¶ 230-34.)  This claim is not a recognized common law or statutory claim that may appropriately be brought in this Court.  Indeed, Plaintiffs have not cited any case or statutory authority to support this claim.  The Court also notes that remedies and sanctions for improper behavior and filings in bankruptcy court are matters on which the Bankruptcy Code is far from silent.  See In re Miles, 430 F.3d 1083, 1092 (2005).  Moreover, it appears this defect is not curable by amendment.  Accordingly, the Court grants Defendants' motion to dismiss the twelfth claim against them with prejudice.

/ / /

/ / /

/ / /

### 10. Sufficiency Of Alleged Facts Regarding Claim For Intentional Interference With Contract Regarding Contract Between Plaintiffs and Plaintiffs Attorney

Plaintiffs allege in their sixth claim that Defendants intentionally interfered with contracts between Plaintiffs and several potential lenders, a potential purchaser of the property, and Plaintiffs' attorney in the state suit.  (SAC ¶ 196.)  The elements of an interference with contracts claim are:

(1) the existence of a valid contract between the plaintiff and a third party;

(2) the defendant's knowledge of that contract;

(3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship;

(4) actual breach or disruption of the contractual relationship; and

(5) resulting damage.

See Reeves v. Hanlon, 33 Cal. 4th 1140, 1148 (2004).  The Court has already dismissed with prejudice the claim for interference with contract based on contracts between Plaintiffs and several potential lenders, and a potential purchaser of the property, based on claim preclusion.  See supra, part B.1.  Additionally, Plaintiffs have failed to allege sufficient facts to support their allegation of Defendants' interference with the contract between Plaintiffs and Plaintiffs' attorney in the state suit, and dismissal of this claim with prejudice is proper because the defect appears to not be curable by amendment.  See Vess, 317 F.3d at 1108.

### 11. Defendants Other Grounds For Motion To Dismiss

To the extent that Defendants raise additional grounds to dismiss Plaintiffs' claims against Defendants that have already been dismissed by the Court, the Court declines to address those grounds as they are moot.

### C. Claims Against Doe Defendants

Defendants argue that the Court should dismiss the eighty Doe defendants named by Plaintiffs for failure to timely serve the Doe defendants under rule 4(m) of the Federal

Rules of Civil Procedure.  Rule 4(m) states:

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period. This subdivision does not apply to service in a foreign country pursuant to subdivision (f) or (j)(1).

Plaintiffs filed their SAC on August 22, 2006, more than 120 days ago, and have not shown good cause why the Court should grant them more time.  The Court notes that Plaintiffs filed their original complaint more than one and one-half years ago, and has been pursuing similar claims against at least some of the defendants for over three and one-half years.  Accordingly, the Court grants Defendants motion to dismiss the Doe defendants without prejudice.

**D.     Anti-SLAPP Motion**

Defendants argue that Plaintiffs' claims for fraud on the court (claim eleven), interference with a court trial (claim thirteen), and fixing the outcome of a trial (claim fourteen), along with a number of allegations made in Plaintiffs' other claims, violate section 425.16 of California's Code of Civil Procedure, the anti-SLAPP statute. California's anti-SLAPP law is substantive in nature, and therefore a federal court exercising diversity jurisdiction follows California's law.  See U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., Inc., 190 F.3d 963, 972 (9th Cir. 1999).

Section 425.16(b)(1) states that:

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the

plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

Section 425.16(e)(1) defines an "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" to include "any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law." The anti-SLAPP statute protects all speech activity before a governmental body whether or not the statements involve a public issue; all that matters is that the First Amendment activity take place in an official proceeding or be made in connection with an issue being reviewed by an official proceeding.  See Briggs v. Eden Council for Hope & Opportunity, 19 Cal. 4th 1106, 1118 (1999).

Any 'person' (defendant) sued for acts in furtherance of free speech or petition activities is protected by the anti-SLAPP statute.  See Cal. Civ. Proc. Code § 425.16(b). 'Person' as used in section 425.16 includes corporations, see Mattel, Inc. v. Luce, Forward, Hamilton & Scripps, 99 Cal. App. 4th 1179, 1188 (2002), and attorneys who have been made defendants in a lawsuit.  See Jespersen v. Zubiate-Beauchamp, 114 Cal. App. 4th 624, 629 (2003); see also Vess, 317 F.3d at 1109 (holding that nothing in the anti-SLAPP statute categorically excludes any particular type of action from its operation, and  defendants may move to strike under the anti-SLAPP statute despite the fact that they are neither small nor championing individual interests).   Therefore, Defendants have standing to bring this anti-SLAPP motion.

A court considering a motion to strike under the anti-SLAPP statute must engage in a two-part inquiry: (1) it must determine if a defendant demonstrates an initial prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's rights of petition or free speech; and (2) once the defendant has made a prima facie showing, the burden shifts to the plaintiff to demonstrate a probability of prevailing on the challenged claims.  See id. at 1110.  "If 'the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim,' the

motion to strike must be denied." Id.  The defendant need not show, however, that the plaintiff's suit was brought with the intention to chill the defendant's speech or that any speech was actually chilled.  See id.

In deciding whether the initial "arising from" requirement is met, a court considers the pleadings, and supporting and opposing affidavits stating the facts upon which the liability is based.  See Navellier v. Sletten, 29 Cal. 4th 82, 89 (2002) (citing Cal. Civ. Proc. Code § 425.16(b)).  Under the plain terms of the statute it is the context or setting itself that makes the issue a public issue.  See Briggs , 19 Cal. 4th at 1116.

### 1.    Fraud on the Court Claim

Defendants argue that Plaintiffs' claim for fraud on the court, which is based on alleged false statements made in the San Diego County Superior Court and the Bankruptcy Court in the Southern District of California, constitute written or oral statements or writings made before a judicial proceeding, and therefore arise from an act in furtherance of Defendants' rights of free speech.  A cause of action arising from a defendant's litigation activity is appropriately the subject of an anti-SLAPP motion. See Rusheen v. Cohen, 37 Cal.4th 1048, 1056 (2006); see also Briggs, 19 Cal. 4th at 1115 (holding that statements protected under the litigation privilege are equally entitled to benefit under the anti-SLAPP statute); Healy v. Tuscany Hills Landscape & Recreation Corp., 137 Cal. App. 4th 1, 5 (2006) (holding that both California's litigation privilege and the anti-SLAPP statute protect litigants' right of access to the courts without fear of being harassed subsequently by derivative tort actions); supra Part B.5-.6.  Therefore, Defendants have made a prima facie showing that Plaintiffs' claim for fraud on the court arises from acts in furtherance of Defendants' free speech rights.

Since Defendants have made a prima facie showing that Plaintiffs fraud on the court claim arises from acts in furtherance of Plaintiffs' rights of free speech, the burden shifts to Plaintiffs to demonstrate a probability of prevailing on the challenged claim. Plaintiffs must demonstrate that their fraud on the court claim is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable

judgment.  See Premier Med. Mgt. Systems, Inc. v. California Ins. Guar. Ass'n, 136 Cal. App. 4th 464, 472 (2006).  The Court has previously concluded that Plaintiffs claim for fraud on the court is legally insufficient.  See supra, Part B.6-.7.  Accordingly, the Court grants Defendants motion to strike Plaintiffs' fraud on the court claim pursuant to California's anti-SLAPP statute.

**2.    Interference with a Court Trial and Fixing the Outcome of a Trial Claims**

Defendants also argue that Plaintiffs' claims for interference with a court trial, and fixing the outcome of a trial, relate specifically to litigation activity, and therefore arise from acts in furtherance of Defendants' rights of free speech or petition.  Plaintiffs' interference with a court trial and fixing the outcome of a trial claims are based mainly on Plaintiffs allegations that Defendants "corrupted" Plaintiffs' attorney during the state suit.  It is true that Plaintiffs also reassert in both of the claims that Defendants knowingly presented false evidence during the state suit.  Whether the anti-SLAPP statute applies to a claim, however, is determined by the 'principal thrust or gravamen' of a plaintiff's claim.  See Martinez v. Metabolife Int'l, Inc., 113 Cal. App. 4th 181, 187 (2003).  It cannot be invoked where allegations of protected activity are only incidental to a cause of action based on nonprotected activity.  See id.  The allegation that Defendants presented false evidence is incidental to the principle thrust of Plaintiffs' claims for interference with a court trial and fixing the outcome of a trial, which is that Defendants allegedly corrupted Plaintiffs' attorney in the state suit.  An allegation of corrupting an opponents attorney is not an act in furtherance of Defendants' rights of free speech or petition.  Accordingly, the Court denies Defendants' motion to strike Plaintiffs' interference with a court trial and fixing the outcome of a trial claims.

**3.    Allegations from Other Claims**

Defendants argue that a number of allegations made in Plaintiffs other claims should be stricken based on California's anti-SLAPP statute or, alternatively, pursuant to rule 12(f) of the Federal Rules of Civil Procedure.  An anti-SLAPP motion lies against

a "cause of action" or "claim" or "complaint" arising from protected speech or petitioning activity, not against incidental allegations made in a claim whose principle thrust does not involve protected First Amendment activity. See Cal. Civ. Proc. Code § 425.16(b)(1),(3) & (f); Martinez, 113 Cal. App. 4th at 187. Therefore, the Court denies Defendants motion to strike individual allegations from Plaintiffs other claims based on the anti-SLAPP statute. Additionally, since the Court has already dismissed the claims that contain allegations that Defendants move to strike under rule 12(f), the Court declines this motion as moot. But cf. White v. Lieberman, 103 Cal. App. 4th 210, 220 (2002) (holding that it is error for a district court to rule that a defendant's anti-SLAPP motion was moot because the court had sustained the defendant's demurrer).

### 4.     Attorney Fees

California's anti-SLAPP statute states that:

> [A] prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs. If the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion.

Cal. Civ. Proc. Code § 425.16(c).   The fee award is mandatory regarding a defendant who brings a successful motion to strike. See Ketchum v. Moses, 24 Cal. 4th 1122, 1131 (2001). Defendants that are only partially successful in their anti-SLAPP motion are considered prevailing parties. See ComputerXpress, Inc. v. Jackson, 93 Cal. App. 4th 993, 1020 (2001). However, such defendants are not entitled to fees and costs based on unsuccessful claims that are legally or factually unrelated to the successful claims. See id. Accordingly, Defendants are only entitled to fees and costs based on their motion to strike Plaintiffs' claim for fraud on the court. Furthermore, Defendants bear the burden of providing documentation regarding the appropriate hours expended on their successful claim and their hourly rates in order to collect fees and costs. See id. The court may reduce any requested compensation on account of a failure to produce

1   appropriate time records.  See id.  Plaintiffs are not entitled to any fees or costs as the

2   Court concludes that Defendants' unsuccessful anti-SLAPP claims were neither

3   frivolous nor solely intended to cause unnecessary delay.

4   **E.   Plaintiffs' Request to Amend Complaint**

5       Plaintiffs request permission to amend their complaint to add a claim under the

6   Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq.

7   (Pls.' Opp. Defs.' Mot. Dismiss, at 2-3; Pls.' Opp. Defs.' Mot. Strike California's Anti-

8   SLAPP Statute, at 1-2.)  Rule 15(a) of the Federal Rules of Civil Procedure provides

9   that, after a responsive pleading has been served, "a party may amend [its] pleading only

10  by leave of the court or by written consent of the adverse party . . . ." Fed. R. Civ. P.

11  15(a).  A district court has discretion in granting or denying a motion for leave to amend.

12  See Jackson v. Bank of Hawaii, 902 F.2d 1385, 1387 (9th Cir. 1990).

13      In deciding whether to grant a leave to amend, factors to be considered include:

14  the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to

15  cure deficiencies by previous amendments, undue prejudice to the opposing party, and

16  futility of the proposed amendment.  See Moore v. Kayport Package Exp., Inc., 885 F.2d

17  531, 538 (9th Cir. 1989) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).  A trial

18  court's discretion to deny a motion for leave to amend is particularly broad where the

19  moving party previously has been granted leave to amend.  See Chodos v. West Pub.

20  Co., Inc., 292 F.3d 992, 1003 (9th Cir. 2002).

21      Plaintiffs initial complaint, filed in May 2005, included claims for civil RICO and

22  conspiracy to commit or entice others to commit RICO violations.  (Compl. ¶¶ 63-66

23  (Doc. No. 1).)  On August 29, 2005, with leave of Court, Plaintiffs filed a first amended

24  complaint ("FAC") that did not allege any RICO claims.  (FAC ¶¶ 1-292 (Doc. No. 8).)

25  Accompanying the FAC was an affidavit by Frank Whitty stating that after researching

26  the matter, Plaintiffs decided that their claim did not qualify as a RICO case.  (Sworn

27  Aff. Verif. Am. Pls.' Original Compl., at 2 (Doc. No. 9).)  On August 7, 2006, Plaintiffs

28  filed a motion requesting the Court's permission to file another amended complaint.

1  (Pls.' Req. Mot. Ct. Permission Immediately File Serve FAC (Doc. No. 16).)   The
2  motion was granted by the Court.  (Doc. No. 15.)

3       Given the undue delay of over a year and a half since Plaintiffs initially filed their
4  complaint in this case, the sworn representation by plaintiff Frank Whitty, J. D., that the
5  issues involved in this case do not qualify as RICO claims, the fact that the Court has
6  previously granted Plaintiffs leave to amend their complaint two times, the prejudice that
7  Defendants would suffer if the Court allowed Plaintiffs to file an amended complaint
8  regarding events that have been lumbering along for over a decade, and the futility of
9  Plaintiffs bringing RICO claims regarding causes of action subject to claim preclusion
10  because of the state suit, see Feminist Women's Health Center v. Codispoti, 63 F.3d 863,
11  868 (1995), or regarding privileged testimony from a judicial proceeding, see Blevins
12  v. Ford, 572 F.2d 1336, 1338 (1978), the Court denies Plaintiffs request to file an
13  amended complaint to add RICO claims.

14  **Conclusion**

15       For the reasons discussed, the Court **GRANTS WITH PREJUDICE** Defendants'
16  motion to dismiss Plaintiffs' claims for intentional interference with prospective
17  economic advantage (claim one), fraud (claim two), negligence (claim three), wire fraud
18  (claim four), mail fraud (claim five), interference with contract (claim six), breach of
19  contract (claim seven), conversion (claim eight), unfair business practices (claim nine),
20  breach of the covenant of good faith and fair dealing (claim ten), fraud on the court
21  (claim eleven), contempt of federal bankruptcy orders (claim twelve), interference with
22  a court trial (claim thirteen), fixing the outcome of a trial (claim fourteen), and wrongful
23  prevention (claim fifteen).  Accordingly, Defendants FNMC, CMI, CGI, Krawcheck and
24  Wheeler are dismissed from this case.  The Court **GRANTS WITHOUT PREJUDICE**
25  Defendants' motion to dismiss the Doe defendants for untimely service.  The Court
26  **GRANTS IN PART AND DENIES IN PART**

27  / / /
28  / / /

05-CV-1021

Defendants anti-SLAPP motion.   The Court **DENIES** Plaintiffs request to file an amended complaint to add RICO claims.

IT IS SO ORDERED.

DATED:  February 25, 2007

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

COPIES TO:
Frank Whitty
Tazu Whitty
12721 Coachman Court
Poway, CA 92064

Martin T McGuinn
Kirby & McGuinn
600 B Street
Suite 1950
San Diego, CA 92101-4515

Jana Logan
Miles Wright Finlay and Zak
350 West Ash Street
Suite 670
San Diego, CA 92101

 Sung-Min Christopher Yoo
Alvarado Smith and Sanchez
4 Park Plaza
Suite 1200
Irvine, CA 92614